
FILED
2015 Feb-18  PM 01:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| A. JOHN LUCAS; GEORGE M. TAYLOR, III, as Designated Co-Trustee of the Thomas M. Acheson Revocable Trust; THE THOMAS M. ACHESON REVOCABLE TRUST, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>DAVID J. ACHESON; SHEREE N. ACHESON, )<br><br>Defendants. )<br><br>SHEREE N. ACHESON, )<br><br>Cross Claimant, )<br><br>vs. )<br><br>DAVID J. ACHESON, )<br><br>Cross Defendant. ) | **CASE NO. 2:14-CV-0856-SLB** |

**<u>MEMORANDUM OPINION</u>**

This case is presently pending before the court on defendant/cross defendant David Acheson's Motion to Dismiss or, in the Alternative, Motion to Abstain, (doc. 14),[1] and Motion to Dismiss Crossclaim, (doc. 18).  Plaintiffs, A. John Lucas, George M. Taylor, III, and the Thomas M. Acheson Revocable Trust, filed the instant interpleader and declaratory

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

judgment action seeking to determine the amount of David Acheson's share of the Thomas M. Acheson Revocable Trust ["Revocable Trust"] following the death of Thomas Acheson.[2] Defendant/cross claimant Sheree Acheson has filed a cross claim based on outstanding promissory notes payable by David Acheson to Thomas and Sheree Acheson. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that David Acheson's Motions to Dismiss, (docs. 14, 18), are due to be denied and his Motion to Abstain (doc. 14), is due to be denied.

## I. <u>STATEMENT OF FACTS</u>

Plaintiffs' Complaint in Interpleader and for Declaratory and Equitable Relief contains the following factual allegations, which the court assumes are true for purposes of deciding David Acheson's Motions:

### <u>PARTIES</u>

5. Plaintiff A. John Lucas is an individual resident-citizen of Jefferson County, Alabama. He is a successor trustee of The Thomas M. Acheson Revocable Trust (the "Revocable Trust"). Mr. Lucas has served as Mr. Thomas Acheson's companies' Secretary/Treasurer and Controller for over 30 years and has extensive knowledge of the Acheson companies' financial affairs.

6. Plaintiff George M. Taylor, III, is an individual resident-citizen of Jefferson County, Alabama. He is a successor trustee of the Revocable Trust. Mr. Taylor has served as Mr. Acheson's general counsel and trusted legal advisor for over 20 years.

---

[2]The court notes that, upon the death of Thomas M. Acheson the Revocable Trust became irrevocable. However, for purposes of this Memorandum Opinion, the court will refer to it as the Revocable Trust, as the parties do.

7.  Plaintiff The Thomas M. Acheson Revocable Trust is a trust created by Thomas M. Acheson on October 10, 2000.  It was amended several times during Mr. Acheson's lifetime, with the last such amendment occurring on May 6, 2010 (the "Sixth Amendment and Restatement of The Thomas M. Acheson Revocable Trust" . . .).  The Revocable Trust is currently being administered by plaintiffs Lucas and Taylor.

8.  Both Lucas and Taylor became the successor trustees of the Revocable Trust upon the death of the settlor of that Trust, Thomas M. Acheson.  Mr. Acheson died on January 14, 2014.  Since then, Lucas and Taylor have accepted their roles as trustees of the Revocable Trust and have performed various acts in their roles as trustees of that trust.

9.  Defendant David J. Acheson is a resident-citizen of Ft. Myers, located in Lee County, Florida.  He is a qualified beneficiary under the Revocable Trust.  David Acheson is the son of Thomas M. Acheson and, upon information and belief, was estranged from his father at the time of his [father's] death.

10.  Defendant Sheree N. Acheson is a resident-citizen of Vestavia Hills, located in Jefferson County, Alabama.  She is a qualified beneficiary under the Revocable Trust.  She was married to Thomas M. Acheson at the time of his death.

## GENERAL ALLEGATIONS

### A.  CREATION OF THE REVOCABLE TRUST

11.  Over several decades, Thomas M. Acheson successfully owned and operated several automobile dealerships in Hoover, Alabama, Memphis, Tennessee, Jackson, Mississippi, and Daphne, Alabama.  For more than a decade, Mr. Acheson undertook a long and evolving process of planning his significant estate.  His desire was to provide some money to his two children, David and Cameron Acheson, and his grandchild, Paige Acheson.  Mr. Acheson, however, desired that the bulk of his assets and money go to his current wife, Sheree N. Acheson, to whom he was married for the last sixteen (16) years.

12.  Throughout his life, Mr. Acheson remained in charge of his business empire and made major strategic decisions with respect to each of his

3

businesses, including decisions as to borrowing and investment of funds, the sale and purchase of dealerships, hiring and firing of employees, and relationships with manufacturers. Mr. Acheson remained active in his business and in charge of major decisions with respect to them until his death.

13. During his lifetime, Mr. Acheson established several *inter vivos* trusts in the course of implementing his estate plan. Mr. Acheson sought the advice of several estate planning professionals with respect to the creation, maintenance, and funding of these trusts. While several trusts were created, they all were part of a comprehensive estate plan that Mr. Acheson, with the assistance of his professional advisors, designed, implemented, and altered over time.

14. Mr. Acheson exercised a meticulous degree of control over the planning and drafting process for his estate plan. Planning was based both on his desires for distribution of his assets after his death and also on his desire to minimize tax consequences to the trusts and the beneficiaries.

15. Mr. Acheson created the Revocable Trust on October 10, 2000. He conveyed substantial assets to the Revocable Trust over a period of years, beginning in 2006. During the latter part of 2010 and in 2012, shares of stock owned by Mr. Acheson in automotive dealerships operating in Hoover, Memphis, Jackson, and Daphne were conveyed to the Revocable Trust. These transfers were done with prior approval of each of the manufacturers whose vehicles are sold by those dealerships, as required by existing Dealer Sales and Service Agreements. Each of the manufacturers duly approved the transfer of the shares and none has questioned the validity of the Revocable Trust, or the capacity of Mr. Acheson to establish the Revocable Trust or to convey the shares to the Revocable Trust. The position of Mr. Acheson as "dealer 'principal'" of each of the dealerships was critical to the business relationship between the dealerships and the manufacturers, and Mr. Acheson at all times prior to his death maintained good relations with the manufacturers, none of whom questioned his capacity or skill in acting as the chief executive officer of each dealership.

## B. **APPOINTMENT OF THE TRUSTEES**

16. Mr. Acheson initially appointed himself as trustee of the Revocable Trust. Pursuant to Section 3 of the trust agreement, Mr. Acheson reserved the right to amend, modify, or revoke the trust. Mr. Acheson exercised his

prerogative under Section 3 by amending the Revocable Trust six times during his lifetime. Upon Mr. Acheson's death, the trust became irrevocable and is not subject to further amendment or revocation by anyone.

17. Pursuant to Section 17(c) of the Revocable Trust, upon the death of Mr. Acheson, A. John Lucas and George M. Taylor, III, were appointed by Mr. Acheson to serve as successor trustees and to exercise all powers granted to the trustees under the Revocable Trust.

18. Mr. Acheson died on January 14, 2014. A. John Lucas and George M. Taylor, III, thereafter accepted the position of successor trustees of the Revocable Trust and have taken actions in their capacity as successor trustees under that trust.

## C. BENEFICIARIES OF THE REVOCABLE TRUST

19. The Revocable Trust had two principal beneficiaries. Sheree Acheson, as Mr. Acheson's wife, was the primary beneficiary. His son, David Acheson, was also provided for in the Revocable Trust.

20. Essentially, the [Revocable] Trust provides for the distribution of an amount to be made to David Acheson, which was described in the [Revocable] Trust as the "David Acheson Share." After distributing the David Acheson Share, the rest of the trust estate in the Revocable Trust is to be administered by the trustees for the benefit of Sheree Acheson.

## D. THE PROMISSORY NOTES

21. Over the course of the past seven (7) years, David Acheson attempted to pursue various business ventures, and to do so he frequently borrowed money from Mr. Acheson and his wife, Sheree. A large portion of the money borrowed by David Acheson was used to acquire and run a restaurant in Destin, Florida, which operated under several different names. The restaurant lost hundreds of thousands of dollars and eventually went out of business.

22. The indebtedness of David Acheson to Mr. Acheson and his wife, Sheree, was evidenced by a series of promissory notes (the "David Acheson Notes"). . . .

23.  Each of the David Acheson Notes was made payable to "Thomas M. Acheson <u>and</u> Sheree N. Acheson" and each included a specified interest rate.  Several of the notes . . . were made payable in fifteen (15) annual installments.  Two notes . . . were payable on demand.

24.  Upon information and belief, not a single payment was ever made under any of the David Acheson Notes and they remain unpaid and outstanding, except that Mr. Acheson and his wife, Sheree, forgave certain amounts of indebtedness due, as set forth below:

| DATE OF PROMISSORY NOTE | AMOUNT OF DEBT FORGIVENESS | DATE OF FORGIVENESS |
|---|---|---|
| September 22, 2006 | $14,352 | December 31, 2007 |
| September 22, 2006 | $19,176 | December 31, 2008 |
| September 22, 2006 | $19,176 | September 15, 2009 |

As of the end of April 2014, the current amount in principal and interest owed under the David Acheson Notes was approximately $2,923,944.

25.  The Revocable Trust addresses the David Acheson Notes in Section 6(a)(i).  This section directs the trustee to set aside the David Acheson Share, with such share "valued at $3,000,000 plus all promissory notes and other indebtedness owed by David J. Acheson to Grantor [Thomas M. Acheson] at the time of Grantor's death."  The Revocable Trust further provides in Section 9 that the David Acheson Share is to be transferred, paid over and distributed to defendant David Acheson by the Trustees.

(Doc. 1 ¶¶ 5-25.)

On April 4, 2014, David and Cameron Acheson filed a Petition for Declaratory Judgment and Other Relief in the Probate Court in Jefferson County, Alabama.  (*See* doc. 1-17.)  This Petition did not seek any specific relief or declaration regarding the David Acheson Share.  It sought, inter alia, a determination of beneficiaries under the Revocable Trust and

enforcement of certain rights under Alabama trust law to copies of trust documents and reports from the Trustees.

The instant action was filed on May 7, 2014, depositing $3,000,000 in the court's registry and asking the court to decide the issue of the David Acheson Share and to enjoin state-court proceedings pending that determination.[3]  On May 27, 2014, David and Cameron Acheson filed an Amended and Restated Declaratory Judgment Petition and Other Relief in the Probate Court of Jefferson County, Alabama.  (Doc. 14-1.)  This pleading sought, inter alia, a declaratory judgment invalidating the Revocable Trust, including the Sixth Amendment and Restatement, based on Thomas Acheson's lack of mental and physical capacity and/or undue influence.

Sheree Acheson filed her Answer and Cross Claim against David Acheson in this court on May 30, 2014.  (Doc. 13.)  On that same day, David Acheson filed his Motion to

---

[3]Federal law provides:

In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. . . .

Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361.

Dismiss or, in the alternative, Motion to Abstain, (doc. 14); he filed his Motion to Dismiss the Cross Claim on June 13, 2014, (doc. 18).

## II. <u>DISCUSSION</u>

## A. **INTERPLEADER JURISDICTION – 28 U.S.C. § 1335**

The court has subject-matter jurisdiction over interpleader actions pursuant to 28 U.S.C. § 1335, which states in pertinent part –

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person . . . having in his or its custody or possession money or property of the value of $500 or more . . ., if

>> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property . . .; and if (2) the plaintiff has deposited such money or property . . . into the registry of the court, there to abide the judgment of the court . . . .

28 U.S.C. § 1335(a).

Plaintiffs have deposited $ 3,000,000, which represents part of the David Acheson Share. The alleged adverse claimants to the David Acheson Share are David Acheson, a resident of Florida, and Sheree Acheson, a resident of Alabama. Each claims to be entitled to the so-called David Acheson Share – in whole or in part. David Acheson contends that Sheree Acheson does not claim any part of the $3 million deposited by plaintiffs with the court. (Doc. 14 at 5.) However, "[Sheree] Acheson maintains that neither the full $3,000,000 that has been interplead into court nor any additional monies are due to be paid to David Acheson." (Doc. 22 at 16.) This dispute as to the payment of the David Acheson

Share from the res of the Revocable Trust is sufficient to establish the conflicting claims required by § 1335. Therefore, the court finds that it has jurisdiction pursuant to the interpleader statute.

David Acheson's Motion to Dismiss based on a lack of jurisdiction under § 1335 is due to be dismissed.

## B. ALABAMA'S ABATEMENT STATUTE – ALA. CODE § 6-5-440

David Acheson alleges that the instant action is due to be dismissed based on Alabama's abatement statute, Ala. Code § 6-5-440,[4] because plaintiffs' claims are compulsory counterclaims that must be filed in the probate court and plaintiffs cannot maintain their action in two courts in Alabama at the same time. (Doc. 14 ¶ 14.) In response, plaintiffs argue, *inter alia*, that "an Alabama procedural rule has no field of operation in the federal interpleader context. 'Questions of jurisdiction and procedure [in] federal court interpleader actions are determined by federal law.'" (Doc. 21 at 13-14 [quoting *Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1348 n.3 (S.D. Fla. 2010)].)

The court agrees that Alabama's abatement statute, Ala. Code § 6-5-440, "should not play any role in the decision whether to retain or dispose of litigation." *American Cas. Co.*

---

[4]"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times." Ala. Code § 6-5-440.

*of Reading v. Skilstaf, Inc.*, 695 F. Supp. 2d 1256, 1260 (M.D. Ala. 2010)(internal quotations, citation, and footnote omitted).

> Questions of jurisdiction and procedure of a federal court interpleader actions are determined by federal law. *Coastal Air Lines, Inc. v. Dockery*, 180 F.2d 874 (8th Cir. 1950). As to matters of substantive law and choice of law questions in actions premised on diversity jurisdiction, the federal court must apply the law of the forum state. *Griffin v. McCoach*, 313 U.S. 498, 61 S. Ct. 1023, 85 L. Ed. 1481 (1941). Thus, the federal interpleader statute is merely a special brand of diversity jurisdiction and the determination of who had the right to an interpleader fund is made under the law of the forum state. *Metropolitan Life Ins. Co. v. O'Ferrall Ochart*, 635 F. Supp. 119 (D.C. Puerto Rico 1986).

*Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1284 (S.D. Fla. 2007).

Therefore, the court finds that the Alabama abatement statute, a procedural rule, does not apply to this matter. Rather, any issue regarding abatement based on the pending probate proceeding is properly addressed pursuant to federal abstention doctrines.

## C. PROBATE EXCEPTION

The Supreme Court has "recognized a 'probate exception' . . . to otherwise proper federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)(citations omitted). "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id*. at 311-12.

"Property properly conveyed to a trust, even a revocable trust, is not part of the settlor's 'estate.'" *Baldwin v. Estate of Baldwin*, 875 So. 2d 1138, 1141 (Ala. 2003)(citing *Russell v. Russell*, 758 So. 2d 533, 538-39 (Ala. 1999)).  "As a threshold matter, the probate exception only applies if the dispute concerns property within the custody of a state court," and, "Assets placed in an inter vivos trust generally avoid probate, since such assets are owned by the trust, not the decedent, and therefore are not part of the decedent's estate." *Curtis v. Brunsting*, 704 F.3d 406, 409-10 (5th Cir. 2013)(footnote omitted).  "In other words, because the assets in a living or inter vivos trust are not property of the estate at the time of the decedent's death, having been transferred to the trust years before, the trust is not in the custody of the probate court and[,] as such[,] the probate exception is inapplicable to disputes concerning administration of the trust." *Id*. at 510.

The court finds that the probate exception to diversity jurisdiction does not deprive the court of jurisdiction to determine the rights of David Acheson and Sheree Acheson to the interpleaded funds.  Therefore, David Acheson's Motion to Dismiss the interpleader action based on a lack of jurisdiction will be denied.

## D.  ABSTENTION

The Supreme Court has held:

"It is most true that this Court will not take jurisdiction if it should not," Chief Justice Marshall famously wrote, "but it is equally true, that it must take jurisdiction if it should . . . .  We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L. Ed. 257 (1821); *see  Marshall v. Marshall*, 547 U.S. 293, 298-299, 126 S. Ct. 1735, 164 L. Ed. 2d 480 (2006).  While

11

Chief Justice Marshall's statement bears "fine tuning," there is surely a starting presumption that when jurisdiction is conferred, a court may not decline to exercise it. *See* R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart & Wechsler's The Federal Courts and the Federal System 1061-1062 (6th ed. 2009).

*Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region*, 558 U.S. 67, 71 (2009).

Recently, the Supreme Court held:

Federal courts, it was early and famously said, have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L. Ed. 257 (1821). Jurisdiction existing, this Court has cautioned, a federal court's "obligation" to hear and decide a case is "virtually unflagging." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). Parallel state-court proceedings do not detract from that obligation. *See ibid*.

*Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 590-591 (2013). "Concurrent state and federal proceedings are generally tolerated. Furthermore, to complain of the costs arising out of concurrent litigation in separate jurisdictions is to complain generally of federalism, which suffers inefficiencies and multiplicity for its own sake." *Provenza v. Stamps*, No. 1:09cv191-LG-RHW, 2011 WL 356604, *3 (S.D. Miss. Feb. 1, 2011)(quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 371 (5th Cir. 1995)("Furthermore, although we recognize that concurrent state and federal proceedings are generally tolerated, the federal court may, in the exceptional case, dismiss its proceedings because of a pending state action." (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976);

12

*Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1 (1983))))(internal

citations and quotations omitted).

### 1. *Wilton/Brillhart* Abstention

David Acheson contends that this case should be dismissed based upon

*Wilton/Brillhart*[5] abstention.  However, the *Wilton/Brillhart* doctrine has only been applied

when the district court has discretion to decline to hear a case, such as pursuant to the

Declaratory Judgment Act,  28 U.S.C. § 2201.  The Eleventh Circuit has held:

> The Declaratory Judgment Act is an enabling Act, which confers a
> discretion on courts rather than an absolute right upon the litigant.  It only
> gives the federal courts competence to make a declaration of rights; ***it does not
> impose a duty to do so***.  In fact . . ., the Supreme Court has expressed that it
> would be uneconomical as well as vexatious for a federal court to proceed in
> a declaratory judgment suit where another suit is pending in a state court
> presenting the same issues, not governed by federal law, between the same
> parties.  The Supreme Court has warned that gratuitous interference with the
> orderly and comprehensive disposition of a state court litigation should be
> avoided.  This warning should be heeded.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330-31 (11th Cir. 2005)(quoting

*Wilton*, 515 U.S. at 287; citing and quoting *Brillhart*, 316 U.S. at 494-95)(internal citations

and quotations omitted; emphasis added).  The interpleader statute, unlike declaratory

judgment, does not confer discretion on this court to decline to exercise jurisdiction.

Therefore, defendant's Motions to Dismiss or Abstain based on *Wilton/Brillhart*

doctrine is due to be denied.

_____

[5]*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).

In the alternative, David Acheson contends that plaintiffs' claim for a declaratory judgment in Count II of their Complaint "dwarfs and dominates the Plaintiffs' interpleader claim and the outcome of the interpleader claim hinges on the outcome of the declaratory judgment claim." (Doc. 24 at 6.)  Therefore, he contends, "This Court should abstain from hearing Plaintiffs' declaratory judgment claim and stay consideration of the interpleader claim and Sheree's Crossclaim until after the Probate Court has decided the parallel state court action."  (*Id.* at 6.)

The court finds that whether to dismiss or abstain from deciding plaintiffs' declaratory judgment claim turns on whether the court has supplemental jurisdiction of the declaratory judgment claim and whether that claim falls within the category of claims for which the court has supplemental jurisdiction but may decline to exercise it.

Section 1367 provides:

(a)  Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

. . .

(c)  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –

(1)  the claim raises a novel or complex issue of State law,

14

(2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)  the district court has dismissed all claims over which it has original jurisdiction, or

(4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. 1367(a), (c).

The court finds that plaintiffs' declaratory judgment claim – seeking a determination that the Sixth Amendment and Restatement of the Thomas M. Acheson Revocable Trust is valid and asking the court to interpret its meaning – is "so related to [the interpleader claim, the claim] within [the court's] original jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a). Therefore, the court has supplemental jurisdiction over the declaratory judgment claim.

David Acheson contends that the declaratory judgment claim predominates over the interpleader claim.  "A district court may decline to exercise supplemental jurisdiction over a state claim if it 'substantially predominates over the claim or claims over which the district court has original jurisdiction.'" *Morgan v. Christensen*, No. 14-10922, 2014 WL 4402063, *1 (11th Cir. Sept. 8, 2014)(quoting 28 U.S.C. § 1367(c)(2))(unpublished).[6]  "Substantial predominance exists 'when it appears that a state claim constitutes the real body of a case,

---

[6]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

to which the federal claim is only an appendage.'"  *Id.* (quoting *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir.2006)).  Although the declaratory judgment claim is an important part of the relief sought by plaintiffs, it is not more important than the interpleader claim.  Therefore, the court finds that the declaratory judgment claim does not predominate over the interpleader claim.

Because this case contains claims for declaratory relief and interpleader relief, the *Colorado River* doctrine applies to determine whether the court should abstain in favor of the state probate court proceedings.  *See Mega Life and Health Ins. Co. v. Tordion*, 399 F. Supp. 2d 1366, 1369-70 (S.D. Fla. 2005).[7]

---

[7]In *Tordion*, the district court held:

> A federal court does not have such broad discretion [as described by the *Wilton/Brillhart* doctrine], however, when a plaintiff seeks coercive relief, such as rescission, in addition to a declaration under the Declaratory Judgment Act.  *See Occidental Life Ins. Co. v. Nichols*, 216 F.2d 839, 842 (5th Cir. 1954)(district court erred in dismissing life insurer's suit to rescind and declare policy void for insured's misrepresentations concerning his medical history where *inter alia* case "was not merely for a declaratory judgment, but also for rescission"); *PPG Industries, Inc. v. Continental Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973) (court has broad discretionary power to dismiss a suit under *Brillhart* only when the plaintiff exclusively seeks a declaratory judgment); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)("[W]hen other claims are joined in an action for declaratory relief (e.g., . . . rescission . . .) the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief."); *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994)(inclusion of "coercive remedies indisputably removes this suit from the ambit of a declaratory judgment action"); *Village of Westfield v. Welch's*, 170 F.3d 116, 124, n.5 (2nd Cir. 1999)(*Wilton*'s discretionary standard only applies where the federal action seeks purely declaratory relief).

16

## 2. *Colorado River* Abstention

Regarding *Colorado River* abstention, the Eleventh Circuit has held:

> In *Colorado River Water Conservation District v. United States*, the Supreme Court held that a federal court could abstain from a case if (1) a parallel lawsuit was proceeding in state court, and (2) judicial-administration reasons so demanded abstention. 424 U.S. 800, 818-20, 96 S. Ct. 1236, 47 L. Ed.2d 483 (1976). Since the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter" in federal court, and since the federal courts have a virtually unflagging obligation to exercise their jurisdiction, *Colorado River* abstention applies in exceptional circumstances. *Id*. at 817-18, 96 S. Ct. 1236 (internal quotation marks omitted). "Only the clearest of justifications" merits abstention. *Id*. at 819, 96 S. Ct. 1236. As the Supreme Court explained, and as this Court has repeatedly cautioned, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id*. at 813, 96 S. Ct. 1236 (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89, 79 S. Ct. 1060, 3 L. Ed. 2d 1163 (1959)); *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004); *see also Met. Life v. Lockette*, 155 F.3d 1339, 1341 (11th Cir. 1998)("Abstention from the exercise of federal jurisdiction is the exception, not the rule."). And while abstention as a general matter is rare, *Colorado River* abstention is particularly rare, "permissible in fewer circumstances than are the other abstention doctrines." *Ambrosia Coal*, 368 F.3d at 1331. Thus, we have cautioned that

---

> Rather, the stricter requirements embodied in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976), must be satisfied in order for a federal district court to dismiss a suit seeking declaratory relief and rescission in light of a parallel state court case. *See Kelly Inv. Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 n.4 (5th Cir. 2002)("[W]hen an action contains any claim for coercive relief, the *Colorado River* abstention doctrine is ordinarily applicable.")(citing *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000)); *Southwind Aviation, Inc.*, 23 F.3d at 948 ("When actions involve coercive relief the trial court must apply the standards enunciated by the Court in *Colorado River* . . .").

*Tordion*, 399 F. Supp. 2d at 1369-70.

"dismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources." *Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988); *see also First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1364 (11th Cir. 1998)(per curiam)("[D]ismissal is warranted in light of a concurrent state court action only when a balancing of relevant factors, heavily weighted in favor of the exercise of jurisdiction, shows the case to be exceptional." (internal quotation marks omitted)).

> . . .

> Where there are parallel federal and state proceedings, abstention under the *Colorado River* doctrine is still only warranted in exceptional circumstances.   Federal courts must consider six factors in determining whether *Colorado River* abstention is appropriate:

> > (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

> *TranSouth* [*Financial Corp. v. Bell*], 149 F.3d [1292,] 1294-95 [(11th Cir. 1988)].  No single factor is dispositive, and we are required to weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them. *See Lockette*, 155 F.3d at 1341; *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884-85 (11th Cir. 1990).   Finally, we apply these factors flexibly and pragmatically, not mechanically.  *Ambrosia Coal*, 368 F.3d at 1332.

*Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1140-41 (11th Cir. 2013).

For the reasons set forth below, the court finds that the *Colorado River* factors favor this court's exercise of jurisdiction.

**Factor 1:  The Order in Which the Courts Assumed Jurisdiction over Property**

This factor favors retention of jurisdiction in this court.  Plaintiffs have deposited $3,000,000 into the court's registry.  Nothing in the record indicates that the probate court has assumed jurisdiction over any of the property in the Revocable Trust.

**Factor 2:  The Relative Inconvenience of the Fora**

This factor favors this court's exercise of jurisdiction.  The focus of this factor is "on the physical proximity of the federal forum to the evidence and the witnesses." *Jackson-Platts*, 727 F.3d at 1141 (citation omitted).  The federal forum and the state probate court are both located in Birmingham, Alabama.  Because "the federal forum and the state forum are equally convenient[,] this factor . . . cuts against abstention." *Id.*  (citations omitted).

**Factor 3:  The Order in Which Jurisdiction Was Obtained and the Relative Progress of the Two Actions**

This factor favors the court's exercise of jurisdiction.  David Acheson and his sister filed a lawsuit in the probate court before the plaintiffs filed the instant action.  However, no significant progress in that action has occurred.  Indeed, the probate court may be waiting for this court to rule on David Acheson's Motions before proceeding.

**Factor 4:  The Desire to Avoid Piecemeal Litigation**

This factor favors abstention.  Certainly the probate court could entertain plaintiffs' claims and, thus, avoid piecemeal litigation.

**Factor 5:  Whether Federal Law Provides the Rule of Decision**

This factor favors the court's exercise of jurisdiction.  Alabama law will apply to determine the interests of the parties under the terms of the Revocable Trust.  However, "this factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve.  *Id.* at 1143.  Interpretation of the terms of the Trust raises no "thorny and difficult state law questions."  *Id.*

**Factor 6:  Whether the State Court Will Adequately Protect the Rights of All Parties**

This court finds no reason to assume that either the probate court or this court will not adequately protect the rights of all parties.  Therefore, this factor is neutral.  *Id.* at 1143.

Based on the foregoing, David Acheson's Motion to Abstain based on the *Colorado River* factors will be denied.

## E.  MOTION FOR DISMISS COUNTERCLAIM FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

David Acheson contends that Sheree Acheson's counterclaim is due to be dismissed because she did not join the estate of Thomas Acheson, which he contends is an indispensable party.  (Doc. 18 ¶ 4.)  The court notes that plaintiffs have filed a Motion to Amend that seeks to add the Estate of Thomas M. Acheson.  (Doc. 29.)  The Motion to Amend will be granted and, therefore, the court will deny David Acheson's Motion to Dismiss, (doc. 18), as moot.

20

## <u>CONCLUSION</u>

For the foregoing reasons, the court is of the opinion that it has jurisdiction to decide the federal interpleader claims and Sheree Acheson cross claim and that abstention is not warranted.  An Order denying David Acheson's Motion to Dismiss, or, in the alternative, Motion to Abstain, (doc. 14), and his Motion to Dismiss Crossclaim, (doc. 18), will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 18th day of February, 2015.

*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE

21